The Chief Justice
delivered the opinion of the couTt.
The plaintiffs in error were indicted in Jackson county for breaking and entering a gin-house and stealing a quantity of cotton. The indictment contained two counts. They moved the court for' a change of venue to some other county upon grounds stated in their affidavit, as follows:
“That they do not believe they can get a fair and impartial trial in the county of Jackson, on account of the, undue influence of the principal witnesses, who are prominent merchants in the count}r, over the minds of the inhabitants of Jackson county, and the great prejudice existing aomng the people of Jackson county against all persons charged with cotton stealing and breaking into gin-houses with intent to commit felony.”
The State Attorney objected to the granting of the continuance and disputed the statements in the affidavit, and the Judge, after examining the Sheriff and Clerk, refused to grant the motion, to which exception was duly taken.
This ruling of the Judge is alleged to be erroneous.
The accused then moved the court to continue the cause to the next regular term of the court, on grounds stated in the affidavit of McNealy, that he cannot safely go to trial at'this term of the court on account of the absence of Sarah A. Hays, a material witness for said defendant; that said witness has been duly served with a subpoena; that she is absent without the consent of the said defendant; • that she resides in* Jackson county, and he expects to procure her attendance at the next term; that he expects to prove by her that he bore a good reputation for honesty in the community where he lived; that he lived near the witness for about eleven years, and she is well acquainted with his general reputation for honesty.
The State Attorney objected to the continuance, and stated that he was willing to admit that Sarah A. Hays, if present, would testify to the facts which defendant stated she would testify to.
The Judge refused to grant a continuance, to which ruling an exception was taken. This ruling is assigned as error.
The record, after reciting the indictment, proceeds thus: “Upon said defendants being brought forward to be arraigned upon the foregoing indictment, before said indictment was read to them upon said arraignment the defendants by their attorneys objected to the whole of- sáid indictment being read to the defendants, or to their being arraigned upon the whole indictment, upon the following grounds, to-wit: that on a former trial of the said defendants, upon the same indictment, the defendants, after the testimony was closed on both sides, moved that the State Attorney be -put to his election upon which count of the indictment he would go to the jury, and said motion being resisted by the State Attorney, the Judge nevertheless granted the same and the State Attorney selected the first count, and defendants now say the State is still bound by said election.” But the Judge decided' that the objection ought not to be allowed, but that the defendants ought to be arraigned upon both counts, and thereupon the defendants *57 were arraigned and tried upon the whole indictment. To :this ruling the accused excepted, and assign error thereon.
The defendants were then (as the record states) arraigned upon the whole indictment and pleaded not guilty and the trial proceeded.
Upon the State Attorney in opening the case to the jury proceeding to read the indictment, the accused objected to his reading the second count upon the ground “that the State Attorney, in a former trial upon the same indictment of the defendants, had elected to rely upon the first count of the indictment, and that he should now be bound by said election.” But the Judge decided against the objection and allowe.d the whole indictment to be read to the jury. The accused excepted and this ruling is assigned as error.
After the hearing of testimony in behalf of both parties the cause was submitted to the jury, who rendered a verdict of guilty as to both of the accused.
A motion was made for a new trial on the ground that the verdict was against the evidence; that the evidence was insufficient; that the court erred in permitting thej second count of the indictment to be read to the jury, the State Attorney having elected to proceed upon the first count, and 'that the charge of the court (which is not in the record,). was contrary to law. The court refused a new trial and sentenced the accused to imprisonment in the State Prison for one year.
I. The first question suggested by the assignment of errors is that the court overruled the motion for a change of venue.
The statute (laws of 1868, sec. 13, p. 108,) says that “all criminal causes shall be tried in the county where the of-fence was committed, * except when otherwise provided by law, unless it shall appear to the satisfaction of the court, by affidavit, that a fair and impartial trial cannot be had in such county.” This is substantially the law of 1845. If it shall appear to the satisfaction of the court that a fair and impartial trial cannot he had in the county, (the" law says,) the court may direct that the accused be tried in some other county adjacent to it, where a fair and impartial trial may be had.
It is very uniformly held by the courts that an application for a change of venue is addressed to the sound discretion of the court, and the ruling of the court in refusing the change will not be held erroneous unless it appears upon -the facts presented the court acted unfairly and was guilty of a palpable abuse of sound discretion. The statute places the matter in the judgment of the court. The court must bé “satisfied” that the accused cannot have a fair and impartial trial in the county.
The application for the change of the venue in this case merely stated the belief of the defendants that they could not have a fair and impartial trial because the prosecuting witnesses were men of influence in the community, and because of the great prejudice of people against persons charged w.ith breaking into gin-houses and stealing cotton. The high standing and respectability of the witnesses is certainly not a good reason for a change of venue. It is not stated that they have been guilty of actively exercising iheir influence and position to create a prejudice against llic-’c defendants in Jackson county, nor is it stated in the aft’dari! that there is any prejudice in the county against them arising from any source. And it is not probable that there i* any county in the State in which the mass of reputable people are not “prejudiced” against burglary and larceny.
IVc cannot find in the proceedings of this case any reason .for imputing unfairness or partiality on the part of the Judge in refusing the transfer of the place of trial.
II. As to the application for a continuance, the rule of law is the same; the application is addressed to the sound discretion of the court, and except it appears that there has been a gross abuse of discretion whereby the rights of the accused may have been jeoparded, /the decision of the court will not be disturbed. 5 Gilman, 473; 1 Blackf., 63; 9 Iredell, 429; 13 Miss., 382; 3 Gilman, 368; 2 ib. 540; 12 Gratt., 564; Gladden vs. State, 12 Fla., 562; 9 Fla., 490; 13 Fla., 675; 3 Parker Cr. Rep., 199.
There was but one witness on the part of the defendants absent, and the testimony expected from that one was as to the good character of the accused. An examination of the record shows that no testimony as to the good character was offered on the trial. May we not conclude, therefore, that the accused knew of but one person who would testify to his good character, notwithstanding he had lived in the same neighborhood over eleven years? The courts in England and the older States very uniformly refuse to continue cases on account of the absence of witnesses as to character only. (3 Parker, 199, and authorities cited.)
III. As to the point that upon a previous trial the State Attorney had elected to try the accused upon the first count and abandoned the second, and upon a second trial they were tried upon both counts, we do not find in the record'any ground for the question. The record does not show that there had been a previous trial, or that one of the counts of the indictment had been abandoned. Such fact is recited in several motions of counsel spread out in the record, but the motions were denied in each instance, and for aught that appears they were denied because the fact did not' exist. A recital by counsel in a motion gives us no evidence that the fact so recited had any existence. As this record gives no intimation other than by the recital of counsel that there had been a previous trial, and the foundation being therefor not laid for raising the question, of course we cannot decide it.
IY. The remaining, ground assigned as error in .the ruling of the court is that the court denied the motion for a new trial made on the alleged ground that there was not sufficient evidence to warrant the verdict. The point made in the brief and argument of counsel is that the indictment charged that the cotton alleged to have been stolen was the property of B. B. Barkley and Andrew Blanks, whereas the evidence showed that the cotton was the property of Barkley alone.
The testimony touching this matter is as follows: Barkley swears that “Andrew Blanks and I farmed together during the year 1877.” (The cotton was of the crop of 1877.) “The gin-house [from which the cotton was taken,] belonged to me individually; the cotton belonged to me and Andrew Blanks; I and Blanks owned the c.otton, because I had employed him to work on my land under a contract by which he was to have the land cultivated. I furnished the land and mule, and was to furnish a barrel of pork to every twenty acres of land he cultivated, and, was to give him a third of what he could make. The cotton had not been divided. Our contract was a verbal contract. I was to have two-thirds and Blanks one-third.”
The argument of counsel is that upon this testimony Blanks was a mere .servant or laborer- for hire upon the land of Barkley, and that therefore the cotton was the sole property of Barkley. If this conclusion is correct, the proof of the ownership varies from the charge in the indictment as to the ownership, and this variance would be fatal, according to the rules universally observed by the courts which require all material allegations to be proved as charged.
Taking all this testimony together, however, notwith-ing Barkley says “I employed him to work on my land,” yet he gives details of the contract which amounts to much more than mere employment to labor. Barkley, by *58 this agreement, was to furnish the land and a mule and barrel of pork for every twenty acres he should cultivate. The counterpart of this contract is that all the mules or teams and pork, and all other supplies, implements, seed, labor, &c., required beyond those named, were to be furnished by Blanks, and Barkley was to 'have two-thirds and Blanks one-third of the crop. The quantity of land to be cultivated was not named, this being.left to the judgment of Blanks or of both parties. ‘Blanks and I farmed together/5 one furnishing the land and a certain portion of the working stock and supplies, and the other the balance of supplies, the labor, 'team, implements, seed, &c. The relation these parties under this contract more .nearly resembles a partnership than that of employer and servant.
By this contract each party was bound to furnish a certain portion "of material for making a crop of cotton upon the land of one of them, and théy agreed on the proportions of the crop to belong to each at the end of the enterprise. Here is no letting of land for a specified rent, nor a hiring of land as by a tenant. It is a cultivation of land upon shares under a special agreement, and the result is a tenancy in common of the crop. (8 John., 151; 3 ib., 216; 15 Wend., 379; 8 Cowen, 220; 34 H. H., 454; 15 Barb., 695; 39 Ill., 372.)
It follows that the allegation in the indictment that the cotton was the property of Barkley and Blanks was sustained by the proofs.
The whole testimony was fairly submitted to the jury, and though there was some conflict in the statements of witnesses, we cannot say that the verdict was an improper one.
The judgment is affirmed.